IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

BOBBY J. LAFARGE, by his personal                                              PLAINTIFF
representative and conservator,
ANGELA BLIZZARD

V.                                              CIVIL ACTION NO.: 1:08CV185-SA-JAD

KEITH KYKER, M.D.; BARRY BERTOLET, M.D.;
CARDIOLOGY ASSOCIATES OF NORTH MISSISSIPPI,
P.A.; and NORTH MISSISSIPPI MEDICAL CENTER, INC.          DEFENDANTS

## ORDER

Before the Court is Defendants, Keith Kyker, M.D. and Cardiology Associates of North Mississippi's, Motion In Limine to Exclude Plaintiff's "Day in the Life" Video [138]. After reviewing the motion, response, rules, and authorities, the Court finds as follows:

## I. BACKGROUND

On July 25, 2008, Plaintiff Angela Blizzard, as the personal representative and conservator of Bobby J. LaFarge, filed a medical malpractice claim against the Defendants. Blizzard alleges LaFarge was admitted to North Mississippi Medical Center ("NMMC") on May 31, 2006, where he suffered a cerebrovascular incident on June 4, 2006, while under the care of NMMC, Dr. Keith Kyker, Dr. Barry Bertolet, and Cardiology Associates.[1] Blizzard contends Defendants breached the standard care with respect to LaFarge, resulting in an

---

[1] Defendants Barry Bertolet, M.D. and North Mississippi Medical Center have both been dismissed from this lawsuit. Thus, the only remaining Defendants are Keith Kyker, M.D. and Cardiology Associates of North Mississippi.

1

increased risk of a thromboembolic event and causing the cerebrovascular incident on June 4, 2006.

## II. ANALYSIS AND DISCUSSION

In Defendants' Motion, they contend that Plaintiff's "Day in the Life" Video should be excluded because (1) it was untimely disclosed, and (2) it is inadmissible under Federal Rules of Evidence 401, 402, and 403.

A. Untimely Disclosure

Plaintiff concedes that the video in question was untimely disclosed. The discovery deadline expired on December 22, 2010, and the video was not disclosed until late March 2011. Plaintiff urges that, despite the untimely disclosure, the failure is harmless in this case. Under Rule 37(c)(1), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, *unless the failure was substantially justified or is harmless.*" FED. R. CIV. P. 37(c)(1) (emphasis added). The Fifth Circuit has noted that the following four factors must be considered in determining whether a violation of Rule 26 is harmless: "(1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to disclose." Tex. A & M Research Found. v. Magna Transp., Inc., 338 F.3d 394, 402 (5th Cir. 2003). This Court considers each factor in turn.

*The Importance of the Evidence*

Plaintiff claims that the video portraying a day in the life of Mr. Lafarge is "crucial" to Plaintiff's case. Defendants do not appear to directly address or dispute this assertion. After thoroughly reviewing the video in question, the Court agrees that it is an important aspect of the Plaintiff's case. The video portrays the life led by Mr. LaFarge for four years after his stroke. Videos such as this one are "often desired because films illustrate, better than words, the impact the injury had on the plaintiff's life." Bannister v. Town of Noble, Oklahoma, 812 F.2d 1265, 1269 (10th Cir. 1987). Not only is this video important to Plaintiff's claim for non-economic damages, but the video's importance is heightened given that Mr. LaFarge is now deceased and, even before his death, he would have been unable to testify as to his injuries due to his condition. Thus, this factor strongly weighs in favor of allowing the evidence.

*Prejudice to the Defendants*

Defendants assert that they will be "irreparabl[y] prejudice[d]" if the video is allowed into evidence. Defendants contend that this irreparable prejudice stems from the fact that "they have been deprived of the opportunity to question, during the discovery phase of this litigation, Dr. Blizzard, Mrs. LaFarge and participants in the video about Mr. LaFarge's condition as depicted in the video and statements made during the course of the video."[2] Defendants deposed the witnesses during the discovery phase; however, due to their lack of knowledge of the video, they did not ask the witnesses questions about it. Given that the *only*

---

[2] Based on the Court's determination of the admissibility of the video under the Federal Rules of Evidence, as discussed in detail below, the Court notes that any prejudice Defendants claim regarding the statements made during the course of the video is now a moot argument, given that the Court has determined that the entire audio portion of the video should be deleted.

prejudice ever identified by the Defendants in their Motion In Limine is the lack of opportunity to question the witnesses about the video, the Court finds that this alleged prejudice can be remedied. Plaintiff offered, in early April 2011, to make the witnesses available (at Plaintiff's counsel's cost) so that any questions Defendants might have regarding the video could be asked. This trial is not set to begin until May 16, 2011. Defendants have refused to agree to Plaintiff's offer to depose the witnesses, arguing that "time does not permit the undersigned counsel to travel to Oregon to properly explore and discover issues presented by the 'day in the life' video."

The Court recognizes that notice of a "day in the life" video is important; however, if the only prejudice claimed is that Defendants were "deprived of the opportunity to question" the witnesses, then having the actual opportunity to question them – even telephonically – will indeed lessen, if not altogether cure, any resulting prejudice. By the time of trial, Defendants will have had a month and a half to question the witnesses regarding the video. As such, while this factor does indeed weigh in favor of excluding the video due to its untimely disclosure, the Court finds that – in this narrow instance – any such prejudice can be remedied through depositions or through the use of effective cross examination at trial. See Tex. A & M Research Found., 338 F.3d at 402 (finding that any prejudice in the party's failure to disclose invoices submitted along with an affidavit was cured because the opposing party "for approximately one month . . . was allowed to examine and respond to the contested evidence"). Plaintiff's counsel, at counsel's cost, should continue to make the witnesses available to the Defendants telephonically, or through other means available, in order to allow

Defendants to question such witnesses regarding the "Day in the Life" video at issue in this case.

*Possibility of Curing the Prejudice through a Continuance*

This factor does not weigh in favor of either party, as neither party has requested a continuance. Further, given that Plaintiff has offered, and the Court is permitting the Defendants to depose the witnesses, the Court finds that a continuance is unnecessary.

*Explanation for the Failure*

Plaintiff concedes that the video footage should have been disclosed to Defendants prior to the expiration of the discovery period. However, Plaintiff's counsel also asserts that they believed the video had indeed been produced. The video in question was apparently produced in June 2008, with additional footage being taken later that year. In March 2009, Plaintiff's counsel received the raw video footage. The Court notes that all discovery in this case was stayed from October 2008 until the Fifth Circuit Court of Appeals denied Defendants' Petition for Interlocutory Appeal in April 2010. Discovery ensued in this case in May 2010.

Plaintiff contends at that, after discovery began again, Plaintiff's counsel had several internal conversations regarding whether the video would be used at trial. According to Plaintiff, in late October / early November of 2010, Plaintiff's counsel directed his legal assistant to go ahead and produce the raw video footage. Plaintiff's counsel, via sworn affidavit, contends that he believed that the video had been produced at that juncture. However, apparently during this time, the legal assistant that was asked to produce the video to Defendants resigned, and the assistant failed to actually produce the video.

On March 28, 2011, the edited version of the video was mailed to Defendants. In a correspondence with Plaintiff's counsel, Defendants' counsel questioned whether a video had ever been produced prior to March 2011. Plaintiff asserts that, at that time, Plaintiff's counsel began searching through correspondence and email files to locate the transmittal letter to show the prior production of the video. Plaintiff contends that it is at this point Plaintiff's counsel realized the video had never been produced. Plaintiff contends that the "video was not intentionally withheld" and that, to the contrary, it has always been in Plaintiff's "best interest for Defendants to have a copy of the day in the life video . . . so that Defendants might pursue settling the case." While Plaintiff's counsel's explanation for failing to timely disclose the video does not rise to the level of substantial justification, there is sufficient evidence before the Court to support a finding that Plaintiff did not act willfully or in bad faith.

After a review of the four above-cited factors, the Court finds that, under the specific facts of this case, the untimely disclosure of the video is "harmless." The Court bases this conclusion on the importance of the evidence, the lack of bad faith in the untimely disclosure, and – importantly – the fact that the *only* prejudice alleged by the Defendants can be cured. As noted, by the time of trial, Defendants will have had a month and a half to question the witnesses about the video. Given this, and after thoroughly reviewing the video itself, the Court is of the opinion that requiring Plaintiff's counsel to bear the expenses associated with their negligent failure to timely disclose the video is an adequate sanction in this case.

B. Rules 401, 402, and 403

Defendants next claim that Plaintiff's "Day in the Life" video is irrelevant under Federal Rules of Evidence 401 and 402 and prejudicial under Rule 403. Federal Rules of Evidence 401 and 402 provide as follows:

> 401: "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
>
> 402: All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence which is not relevant is not admissible.

FED. R. EVID. 401, 402. Further, Federal Rule 403 reads:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

FED. R. EVID. 403. Accordingly, under these Rules, in order for the "Day in the Life" video at issue to be admissible it must be relevant under Rules 401 and 402, and its probative value must be substantially outweighed by the danger of unfair prejudice under Rule 403.

> The typical "day in the life" film
>
> purport[s] to show how an injury has affected the daily routine of its victim. [Such] films show the victim in a variety of everyday situations, including getting around the home, eating meals, and interacting with family members. These films are prepared solely to be used as evidence in litigation concerning the injury. Such evidence is desired because films illustrate, better than words, the impact the injury had on the plaintiff's life.

Bannister, 812 F.2d 1265. In this case, the Court will first analyze Defendants' specific objections to each selected scene of the video, before turning to Defendants' broader objection that the entire video is inadmissible.

Scene I (0:00 – 3:07) initially shows a short interaction between Mr. LaFarge and his wife Betty LaFarge. Scene I also dedicates a large portion of time to depicting Mr. LaFarge lying in bed and sleeping. Defendants contend that, since Mrs. LaFarge is not the Plaintiff, Scene I is irrelevant to a day in the life of Mr. LaFarge. The Court disagrees.

Defendants rely entirely on a case from the Mississippi Supreme Court, Eckman v. Moore, 876 So. 2d 975, 985 (Miss. 2004), for the proposition that a nonparty may never been shown in a "day in the life" video. However, Eckman does not exactly support such a notion. Eckman was a wrongful death case involving the medical treatment provided to Jason Taylor Moore ("Taylor"). On the evening of February 20, 1999, Taylor fell in a movie theater, sustaining a head injury in the fall. He then went to North Mississippi Medical Center for treatment by the on-call physician, Dr. Eckman. On March 20, 2000, Linda Michelle Moore (Michelle), Taylor's wife, filed suit against Dr. Eckman and NMMC, both individually and as the conservator of the estate of Taylor. The complaint alleged personal injury to Taylor and Michelle in connection to the treatment provided to Taylor. On May 19, 2000, Taylor died; thus on August 24, 2000, an amended complaint was filed on behalf of Michelle and the wrongful death beneficiaries of Taylor for alleged negligence resulting in the death of Taylor.

The plaintiff in Eckman was allowed to introduce a "day in the life" video in the trial court. On appeal, the Mississippi Supreme Court held as follows:

> The first video, which was shown during Michelle's testimony, depicts still wedding pictures and pictures of Taylor's stepson, who is not a party to this lawsuit, at a graduation ceremony and a ball game. While the wedding pictures may be admissible to show Taylor as he was before his injury, the proper place for these pictures is not in a "day in the life" video of Taylor Moore. These wedding pictures were also admitted in picture form. As stated in Grimes, the scenes of Taylor's stepson, who is not a party to the lawsuit, serve no other purpose than to elicit sympathy from the jury. These scenes are also not

> relevant to a "day in the in the life" of Taylor Moore and should be deleted from the video. *However, the video also depicts Taylor engaged in physical therapy, Taylor being washed, clothed and fed by staff, and Taylor being visited by his wife and newborn son.* These are the *typical scenes* which are found, and *which should be found* in day-in-the-life videos. If the wedding pictures and the pictures featuring Taylor's stepson were deleted, *this video would be admissible.*

Id. (emphasis added). In this case, the first scene of the video briefly shows Mr. LaFarge being visited by his wife. In stark contrast to Eckman, Scene I never displays still pictures or scenes of *just* Mrs. LaFarge. That is, Mrs. LaFarge is only shown when she is standing by her husband's bed for a short period of time. In fact, Mrs. LaFarge is only present for approximately one minute of Scene I (i.e., from 00:40 to 1:47). The Eckman court recognized that a "typical scene[]" in a day in the life video is one where an individual is "visited by his wife . . . ." Thus, the fact that Mrs. LaFarge briefly appears in Scene I of the video does not automatically preclude the video from being admissible at trial. However, the Court will strike the audio portion contained throughout Scene I. The statements made by Mrs. LaFarge to her husband will be more properly presented through live testimony at trial.

Scene II (3:08 – 11:11) shows an interaction between Mr. LaFarge and an unidentified nurse. The nurse administers Mr. LaFarge's medications and makes several statements in regards to his medication. Defendants assert that the nurse's *statements* are inadmissible because she is only "speculating" about why the various medications were prescribed. Plaintiff concedes that these statements are inadmissible. Not only are the nurse's statements speculative, but statements are also not subject to cross examination. The Court will thus strike all of the audio from Scene II, including – for the reasons stated above – the brief statement made by Mrs. LaFarge.

Scene III (11:11-23:50) shows Mr. LaFarge receiving a bath and having his teeth brushed. Scene III contains statements made by counsel for the Plaintiff and nursing personnel. Defendants contend that these statements are inadmissible because they are irrelevant and not subject to cross examination. The Plaintiff concedes to the inadmissibility of the statements made in Scene III. The Court agrees that the statements made by counsel and unidentified nursing personnel should be deleted from the video. Thus, like Scenes I and II, the Court will strike the audio portion of Scene III.

Besides making specific objections to the video's three scenes, Defendants also contend that the entire video is inadmissible under Rules 401, 402, and 403. As to Rules 401 and 402, the Court finds that the video is certainly relevant to the Plaintiff's case. The video shows a depiction of Mr. LaFarge's life after he suffered from a stroke. The video is not only relevant as to Plaintiff's claim for non-economic damages, but it is also relevant in showing the Plaintiff's life as a result of the Defendants' alleged wrongdoing. See, e.g., Kmart Corp. v. Lee, 789 So. 2d 103 (Miss. Ct. App. 2001) (finding that a videotape in a customer's slip-and-fall action against a store admissible to aid the jury in understanding what procedures the customer underwent as a result of the accident). As such, the Court finds the video to be admissible under Rules 401 and 402.

Defendants next allege that all three scenes of the video are inadmissible under Rule 403. The Defendants provide no analysis or explanation for their contention that Rule 403 precludes the video from being offered as evidence; instead, Defendants only state that the probative value is outweighed by the danger of confusion of the issues, unfair prejudice, and misleading the jury. In the often-cited opinion of Bannister v. Town of Noble, Oklahoma, the

Tenth Circuit set forth four factors that courts are to employ in determining the admissibility of videos such as the one at issue in this case under Rule 403. Bannister, 812 F.2d at 1268-70; see also Eckman, 876 So. 2d at 983 (citing Bannister's four factors for determining the admissibility of a day in the life video under Rule 403).[3]

The Bannister court first stated the "day in the life" video must "fairly represent [ ] the facts with respect to the impact of the injuries on the plaintiff's day-to-day activities." Bannister, 812 F.2d at 1269 (citing Bolstridge v. Cent. Me. Power Co., 621 F. Supp. 1202, 1203 (D. Me. 1985)). In other words, a typical "day in the life" video would not depict a victim performing improbable tasks. Id. at 1269. In order for the video to have the least amount of prejudicial value, the video must portray ordinary, day-to-day situations. Id. In Bannister, the court found that the film "accurately portrayed the daily routine of the plaintiff . . . The film show[ed] Bannister getting around school, getting into his car, pumping gasoline for his car, and performing several different tasks in his home." Id. While the film also portrayed Bannister conducting activities that he would be unlikely to do frequently, the court concluded that "the film as a whole demonstrate[d] Bannister's adaption to his injury." Id. Thus, the Tenth Circuit found that the district court did not abuse its discretion in admitting the film.

Here, the twenty-three minute video only portrays the day-to-day activities of Mr. LaFarge after his stroke. The video shows Mr. LaFarge lying in bed, briefly being visited by his wife, sleeping, taking his medication, taking a bath, and having his teeth brushed. There is

---

[3] DeBiasio v. Illinois Cent. R.R., 52 F.3d 678, 687 (7th Cir. 1995) (same); Chesler v. Trinity Indust., Inc., 2002 WL 1822918 (N.D. Ill. Aug. 8, 2002) (same); Jones v. City of Los Angeles, 20 Cal.App.4th 436, 24 Cal.Rptr.2d 528 (Cal. App. 2d Dist. 1993) (same).

nothing out of the ordinary or improbable about any of the activities in the video. Defendants assert that a video showing these activities will create jury sympathy. While the <u>Bannister</u> court recognized that "conduct that 'serve[s] little purpose other than to create sympathy for the plaintiff is highly prejudicial," the Court in this case – like the court in <u>Bannister</u> – is unable to say that this video tape serves "little purpose" other than to create sympathy. Further, the fact that demonstrative evidence, whether it be in the form of a video or a photograph, may elicit sympathy or some other emotion is not a reason in and of itself to excluded the evidence. <u>See</u>, <u>e.g.</u>, <u>Trapp v. Cayson</u>, 471 So. 2d 375, 381 (Miss. 1985) (finding that a tape should not be excluded because it may contain "emotion overtones" because "while the scenes are undoubtedly unpleasant, so too is plaintiff's injury"); <u>Pisel v. Stamford Hosp.</u>, 430 A.2d 1, 8 (Conn. 1980) (approving admission of videotape which, "while not pleasant viewing, fairly presented to the jury the Pisel's condition and the type of care she was required to receive"); Muller & Kirkpatrick, 5 Federal Evidence § 9:24 (3d ed., updated May 2010) ("The fact that some scenes [in a day in the life video] may be unpleasant to view is not a ground for exclusion."); <u>see</u> <u>also</u> <u>United States v. Cisneros</u>, 203 F.3d 333, 348 (5th Cir. 2000) *and on reh'g en banc*, 238 F.3d 310 (5th Cir. 2001) (finding that the trial judge did not abuse his discretion by admitting gruesome and cumulative testimony and photographs, over the defendant's offer to stipulate to the facts surrounding the victim's murder); <u>United States v. Morton</u>, 493 F.2d 30, 31-32 (5th Cir. 1974) (allowing photographs of victim's injuries, that were relevant to the issues, despite the fact that the defendant was not even contesting the injuries). Accordingly, the fact that the video is very basic and fairly represents day-to-day activities weighs strongly in favor of its admissibility.

Secondly, the Bannister court found that if "a plaintiff is aware of being videotaped for [the purpose of litigation, it] is likely to cause self-serving behavior, consciously or otherwise." Bannister, 812 F.2d at 1269. Although this behavior is of course inevitable to some extent, the court cautioned against the admission of such evidence. Id. In this case, there is no allegation or evidence of any self-serving behavior. Mr. LaFarge, presumably due to his condition, appears to barely notice that he is being taped. He makes no statements and hardly looks at the camera. Further, there is no indication of "corruption" in the video or any "exaggerated difficulty" in performing any activity. See id. Thus, this factor likewise weighs in favor of the admissibility of the video.

The Bannister court next determined that "a jury will better remember, and thus give greater weight to, evidence presented in a film as opposed to more conventionally elicited testimony." Id. The court cautioned other courts in recognizing this legitimate concern when determining the prejudicial effect of a "day in the life" video. Id. Here, Mr. LaFarge, now deceased, cannot be present in court or testify at trial.[4] As such, there is first no concern about the video being duplicative of other demonstrative evidence or testimony so that the trial will be entirely dominated by evidence concerning only Mr. LaFarge's condition.[5] Second, the Plaintiff's video is only twenty-three minutes, portraying only three selected scenes of typical,

---

[4] Even before Mr. LaFarge passed away, the severity of his condition would have precluded him from testifying.

[5] In Helm v. Wismar, 820 S.W.2d 495 (Mo. 1991), the court found that a videotape showing a day in the life of a plaintiff who was injured in an automobile accident was properly excluded where the plaintiff was present in court for the jury's observation. However, in contrast, in Long v. Missouri Delta Med. Ctr., 33 S.W.3d 629 (Mo. Ct. App. 2000), the court of appeals found that the trial court's allowance of multiple displays of an infant's condition was not prejudicial, reasoning that the infant's brief presence in the courtroom could not illustrate the care she required as well as a day in the life video and photographs could.

every-day scenarios. As such, while the Court recognizes the effect and nature of video depictions as evidence, this alone does not preclude the video's admissibility in this case.

Finally, the Bannister court noted that effective cross-examination is lost with "day in the life" videos. Id. This concern of course could be lessened if the victim could be cross examined at trial regarding the film. Id. at 1269-70. Here, as noted, Mr. LaFarge is now deceased and cannot be cross examined at trial. Further, due to Mr. LaFarge's condition post-stroke, he could not have been cross examined at trial or during the making of the video even prior to his death. However, Mr. LaFarge makes no statements during the video regarding his condition or his treatment. Further, while Mr. LaFarge's doctor, his daughter (the Plaintiff in this action), and his wife could not be questioned during the making of the film, the prejudicial effect of this is lessened because they can each be cross examined at trial. See, e.g., McCloud v. Goodyear Dunlop Tires North Am., Ltd., 2008 WL 2323792, at *9-*10 (C.D. Ill. June 2, 2008) (allowing "day in the life" video which depicted the plaintiff's daily routine and noting the plaintiff's caretaker could be cross examined at trial). Likewise, as discussed above, Plaintiff's counsel (at Plaintiff's counsel's cost) has offered to make the witnesses available to be questioned about the video since the beginning of April 2011, and the Court instructs Plaintiff's counsel to continue to make the witnesses available to the Defendants.

In light of the factors outlined above, the Court concludes that, in this case, the probative value of the film is substantially outweighed by any prejudicial effect. The Court notes that other courts, in various jurisdictions, appear to have also regularly admitted into evidence properly-made "day in the life" videos as well as other videos presented as

demonstrative evidence.[6] Even so, in Eckman, the Mississippi Supreme Court addressed a legitimate concern that this Court has also taken into account in ruling this video admissible. The court in Eckman noted,

---

[6] See Bannister, 812 F.2d 1265; Eckman, 876 So. 2d 975; see also Shipp v. General Motors Corp., 750 F.2d 418, 427 (5th Cir. 1985) (finding that the trial court did not abuse its discretion in admitting a party's videotaped experiment evidence over the opposing party's objection that the evidence would mislead and prejudice the jury); Donathan v. Orthopaedic & Sports Med. Clinic, PLLC, 2009 WL 3584263, at *12 (E.D. Tenn. Oct. 26, 2009) (finding that "[c]ourts have usually admitted into evidence even graphic pictures of injuries or dramatized 'day-in-the-life' videotapes"); Jimenez v. United States, 2008 WL 3849915, at *7 (N.D. Ill. Aug. 14, 2008) (allowing into evidence portions of a day in the life video that depicted the plaintiff's "ordinary day-to-day situations because those situations are of the greatest probative," yet excluding the portions of the video that contained conversations with attorneys and statements because any testimony of that nature would be "more properly presented through live testimony at trial"); McCloud v. Goodyear Dunlop Tires North Am., Ltd., 2008 WL 2323792, at *9-*10 (C.D. Ill. June 2, 2008) (allowing day in the life video which depicted the plaintiff's daily routine and noting the plaintiff's caretaker could be cross examined at trial); Pouliot v. Paul Arpin Van Lines, Inc., 235 F.R.D. 537 (D. Conn. 2006) (holding that the defendants in personal injury suit were not entitled to a new trial on the ground that admission into evidence of portion of videotaped deposition of plaintiff's physician encouraged a verdict impermissibly influenced by emotion when the video depicted physician pointing out injuries on plaintiff's body, as well as his colostomy bag and catheter bag, as plaintiff lay on a bed in hotel room where deposition took place, and while plaintiff's muscular degeneration, colostomy, and need for a catheter were themselves upsetting, the video showed no more than necessary to give jurors an understanding of the medical consequences of plaintiff's injury); Chesler v. Trinity Indust., Inc., 2002 WL 1822918 (N.D. Ill. Aug. 8, 2002) (finding "day in the life" video not "egregiously self-serving so as to be unduly prejudicial" when it reflected the plaintiff's home life and activities during physical therapy); Molina v. Bic USA, Inc., 199 F. Supp. 2d 53 (S.D.N.Y. 2001) (finding that a video of a child's hospital stay was admissible in a negligent manufacturer action so that the jury could observe the child's condition, observe the way treatment was administered, and to view the child's progress, even though the video depicted the child's mother beside him and the manufacturer presented evidence that the mother only infrequently visited the child in the hospital); Donnellan v. First Student, Inc., 891 N.E.2d 463 (Ill. App. Ct. 2008) (finding that the danger of any prejudice did not outweigh the probabtive value of a motorist's day in the life video, as the video was not produced to improperly precondition the jury on motorist's theory, video did not present a focus on motorist's pain and discomfort to the exclusion of anything else, and while motorist did wince and/or grimace in different spots in video, he also smiled and talked with the therapist, and there was no undue focus on his pain; instead, the video simply focused on a typical therapy session that would be required for the rest of

> Reality reveals to us that, unfortunately, some day-in-the-life videos are no longer being used for their proper purposes but instead, are being introduced solely for the purpose of eliciting sympathy from the jury. While we admittedly cannot begin to fully comprehend the immense pain and suffering these families have had to endure, the proper purpose of the day-in-the-life video is to show an actual day in the life of the victim.

Eckman, 876 So. 2d at 985. Here, the Plaintiff's video is basic in its making, not exaggerated, and it portrays scenes of ordinary activities (i.e., bathing, sleeping). Thus, as the Eckman court put it, the Plaintiff's video serves its "proper purpose" of "show[ing] an actual day in the life of the [plaintiff]." However, the Court notes that the entire audio portion of the video is to be deleted, as it is either inadmissible or includes statements by parties that will be better presented through live testimony at trial.

---

motorist's life); Velarde v. Illinois Cent. R.R. Co., 820 N.E.2d 37 (Ill. App. 2004) (holding that the trial court did not abuse its discretion in finding that probative value of a day in the life video of a driver of a motor vehicle injured in collision with a freight train was not outweighed by the danger of prejudice, where the video showed driver engaging in commonplace activities and video was narrated by trial witnesses whose testimony was subject to objection and cross-examination); Haselden v. Davis, 534 S.E.2d 295 (S.C. Ct. App. 2000) (finding that a videotape of patient's daily activities near the end of her life was relevant to depict patient's condition and quality of life just shortly before her demise from breast cancer and that the tapes probative value was not outweighed by danger of unfair prejudice, confusion of issues, or misleading jury); Jones v. City of Los Angeles, 20 Cal.App.4th 436, 24 Cal.Rptr.2d 528 (Cal. App. 2d Dist. 1993) (noting that the prejudicial effect of a videotape must be decided on a case by case basis and only when such a videotape has little probative value, is cumulative of other testimony, and is calculated to inflame the jury, can an appellate court conclude that the discretion conferred on the trial court to exclude evidence if its probative value is outweighed by its prejudicial impact should be exercised in favor of exclusion); Hahn v. Tri-Line Farmers Co-op, 478 N.W.2d 515 (Minn. App. 1991) (finding that the trial court did not abuse its discretion in admitting a day in the life videotape of a paraplegic in a products liability action and noting that such videotapes are admissible as probative evidence that assists the trier of fact); Strach v. St. John Hosp. Corp., 408 N.W.2d 441, 453 (Mich. App. 1987) (finding a videotape admissible and not prejudicial when it accurately showed the mobility problems associated with the plaintiff's injury, including his difficulty in getting out of bed, grooming, and getting out of the house).

## III. CONCLUSION

For the foregoing reasons, Defendants' Motion In Limine to Exclude Plaintiff's Day in the Life Video [138] is granted in part and denied in part. Despite Plaintiff's untimely disclosure, the Court concludes that the only prejudice identified by the Defendants' can be remedied either through deposing the witnesses about the video before trial or through effective cross examination at trial. The Court grants Defendants' Motion as it relates to the audio portions of the video; however, it denies Defendants' Motion as it relates to the admissibility of the video itself, finding that the video is relevant to Plaintiff's case and not unfairly prejudicial.

SO ORDERED on this, the  5th   day of May, 2011.

/s/   Sharion Aycock
**UNITED STATES DISTRICT JUDGE**